UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

HRIBAR TRANSPORT LLC,

                    Plaintiff,

                                             Case No. 20-cv-1255-pp

        v.

MICHAEL SLEGERS,

                    Defendant.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR ALTERNATIVELY TO TRANSFER VENUE (DKT. NO. 13)**

On July 8, 2020, the plaintiff filed a complaint in Racine County Circuit Court, alleging that the defendant breached a non-compete agreement in an employment contract with the plaintiff. Dkt. No. 1-1. The plaintiff sought damages and injunctive relief. Id. at 6. On August 14, 2020, the defendant removed the case to federal court, dkt. no. 1, and filed a motion to dismiss for lack of jurisdiction or, in the alternative, a motion to transfer venue to the Northern District of Indiana, dkt. no. 7. On September 18, 2020, the plaintiff filed an amended complaint. Dkt. No. 12. The defendant since has filed a motion to dismiss the amended complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[1] Dkt. No. 13. Alternatively, the

---

[1] The motion says the defendant is moving "pursuant to Fed. R. Civ. P. 12(b)(6)," dkt. no. 13 at 1, but the content of the motion (asking the court to dismiss for lack of personal jurisdiction) and the supporting brief (dkt. no. 14)

1

defendant asks the court to transfer the case to the Northern District of Indiana under 28 U.S.C. §1404(a). Id. The court will deny both motions.

## I.     Subject Matter Jurisdiction

The amened complaint asserts that the plaintiff is a Wisconsin limited liability company with principal offices in Caledonia. Dkt. No. 12 at ¶1. It asserts that the defendant is a resident of Florida. Id. at ¶2. Finally, it asserts that because of the defendant's breach of contract, it has lost over $1 million in business. Id. at ¶23. The court has diversity jurisdiction under 28 U.S.C. §1332.

## II.    Facts

### A.     Parties' Relationship

The amended complaint alleges that the in 2011, the plaintiff acquired a company called MCS Transport, Inc., a business then owned by the defendant. Id. at ¶6. The plaintiff asserts that "in conjunction with the transaction," the defendant agreed to become an employee of the plaintiff. Id. On January 1, 2014, the defendant signed an employment agreement with the plaintiff. Id. at ¶7. The plaintiff alleges that under Section 2 of that employment agreement, the defendant's initial term of employment ran from January 1, 2014 through January 1, 2019. Id. at ¶8. On December 28, 2018, however, the defendant signed a letter that increased the defendant's salary and altered his employee benefits package. Id. at ¶9. The plaintiff asserts that that letter "amended" the

---

indicate that he meant to base the motion on lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

employment agreement, so that it extended the initial employment term "through [the defendant's] resignation effective date of August 15, 2019." Id. at ¶10.

The defendant's direct supervisors all worked out of corporate offices in Caledonia. Id. at ¶11. The plaintiff alleges that the defendant traveled to, and did substantial work in, the Eastern District of Wisconsin; it asserts that between May 2017 and April 2019, the defendant traveled to and stayed overnight in Wisconsin hotels "at least 12 times for sales, budget and customer meetings and related Wisconsin employment activities." Id. at ¶¶12, 13. The plaintiff asserts "upon information and belief" that the defendant also engaged in other work-related activities in Wisconsin while employed by the plaintiff, activities that involved his driving to and from Wisconsin on the same day. Id. at ¶13. The plaintiff alleges that the defendant issued "regular service orders" to the plaintiff in Wisconsin, had phone calls with the plaintiff from its Wisconsin offices and with customers located in Wisconsin, received compensation and expenses from the plaintiff's Wisconsin offices and "engaged in regular email communication with [the plaintiff's] representatives and customers located in Wisconsin." Id. at ¶14.

B.   Contract and Breach

Section 8 of the employment agreement between the parties contained a non-compete provision in which the defendant agreed

during the term of the Agreement and for a period of two (2) years thereafter, not to:

3

(a)     "acquire an ownership interest in, work for, render advice or assistance to or otherwise engage in or enter into any aspects of the business of any 'Competitor' (as defined below)";

(b)     "Contact, solicit or entice, or attempt to contact, solicit or entice, any 'Customer' of the Business so as to cause, or attempt to cause, any of said Customers not to do business with the Buyer or to purchase services sold by the Buyer from any source other than the Buyer"; or

(c)     "perform any trucking, hauling or transportation services for a Customer."

Id. at ¶16.

On July 15, 2019, the defendant notified the plaintiff that he was resigning effective August 15, 2019. Id. at ¶15. The plaintiff says that weeks later, the defendant opened his own trucking business, Logistical Resolutions, Inc., "which provides services in direct competition with [the plaintiff]." Id. at ¶20. The plaintiff alleges that the defendant also began to work for Partners Bulk Logistics, a Michigan competitor of the plaintiff's, and that between September 2019 and the date of the amended complaint, the defendant had solicited work from the plaintiff's customers through Logistical Resolutions, Inc. and on behalf of Partners Bulk Logistics. Id. at ¶¶21-22. The plaintiff alleges that it has lost business from many customers—including customers in Wisconsin and customers who run "freight lands and shipments through and into Wisconsin"—equaling over $1 million. Id. at ¶23.

The plaintiff points to its former Wisconsin-based customer, Rock Solid Stabilization and Reclamation, Inc., as an example of a customer solicited by the defendant. Id. at ¶24. The plaintiff asserts that Rock Solid was the plaintiff's customer while the defendant was the plaintiff's employee. Id. It

4

asserts that after his resignation from the plaintiff's employment, the defendant solicited Rock Solid's business "in direct violation of his Employment Agreement" and that the defendant solicited new transports to Beloit, Green Bay and Milwaukee from Rock Solid. Id. at ¶26. The plaintiff says that Rock Solid did not engage in any business with the plaintiff in 2020. Id. at ¶27. The plaintiff asserts that the defendant has solicited other customers of the plaintiff who, although not located in Wisconsin, ran shipping lanes from Milwaukee to Chicago and from Indiana to Portage, Rothschild and Oak Creek, Wisconsin, including St. Mary's Cement, Inc. and Asphalt Materials, Inc. Id. at ¶28.

The plaintiff alleges that the defendant breached the terms of the employment agreement by "(a) acquiring an ownership interest in Logistics Solutions, Inc., a competitor of [the plaintiff]; (b) working for Partners Bulk Logistics; (c) contacting, soliciting and enticing customers of [the plaintiff] to purchase services from companies other than [the plaintiff]; and (d) performing trucking, hauling or transportation services for customers of [the plaintiff]." Id. at ¶30. It alleges that it has suffered damages as a result. Id. at ¶31.

## III.  Personal Jurisdiction

### A.  Governing Law

Personal jurisdiction is a due process concept.

The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause. The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty. Thus, the test for personal jurisdiction requires that "the maintenance of the suit . . . not offend 'traditional notions of fair play and substantial

5

justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 . . . (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 . . . (1940)).

Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702-03 (1982). For a federal court to have personal jurisdiction over a defendant, the plaintiff is required to show that "[t]he defendant must have purposefully established minimum contacts with the forum." Cent. States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 942-43 (7th Cir. 2000) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985)). The question is "whether the defendant's conduct and connection with the forum are such that it should reasonably anticipate being hailed into court there . . . ." Id. at 943.

When a defendant moves to dismiss a case for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the burden is on the plaintiff to establish personal jurisdiction. Curry v. Revolution Laboratories, LLC, 949 F.3d 385, 392 (7th Cir. 2020) (citing Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003)). Without benefit of an evidentiary hearing, "the plaintiff bears only the burden of making a prima facie case for personal jurisdiction." uBID, Inc. v. GoDaddy Group, Inc., 623 F.3d 421, 423 (7th Cir. 2010). The court takes "the plaintiff's asserted facts as true and resolve[s] any factual disputes in its favor." Id. at 424 (citing Tamburo v. Dworkin, 601 F.3d 693, 700 (7th Cir. 2010); Purdue, 338 F.3d at 782).

In determining whether it has personal jurisdiction, a federal court looks to the law of the forum state in which it sits to determine the limits of its personal jurisdiction. Adv. Tactical Ordnance Sys., LLC v. Real Action

6

Paintball, Inc., 751 F.3d 796, 800 (7th Cir. 2014). This court looks to the law of Wisconsin. Wisconsin courts employ a two-step inquiry when determining whether a court has personal jurisdiction over a nonresident defendant. First, the court determines whether any of the criteria for personal jurisdiction under Wisconsin's long-arm statute is satisfied. U.S. Venture Inc. v. McCormick Transp. LLC, No. 15-cv-990, 2015 WL 6694031, *2-3 (E.D. Wis. 2015) (citations omitted). Wisconsin's personal jurisdiction statute, Wis. Stat. §801.05, "has been interpreted to confer jurisdiction 'to the fullest extent allowed under the due process clause.'" Felland v. Clifton, 682 F.3d 665, 678 (7th Cir. 2012) (quoting Daniel J. Hartwig Assocs., Inc. v. Kanner, 913 F.2d 1213, 1217 (7th Cir. 1990)).

If the requirements of the long-arm statute are satisfied, the court then must consider whether the exercise of jurisdiction over the defendant is consistent with due process. U.S. Venture, 2015 WL 6694031 at *2-3. "[B]ecause Wisconsin presumes its long-arm statute merely codifies the federal due process requirements . . . the burden shifts to [the defendant] to show that jurisdiction would nonetheless violate due process." Total Admin. Servs. Corp. v. Pipe Fitters Union Local No. 120 Ins. Fund, 131 F. Supp. 3d 841, 844 (W.D. Wis. 2015) (quoting Logan Prods. Inc. v. Optibase, Inc., 103 F.3d 49, 52 (7th Cir. 1996)).

"The primary focus of [a court's] personal jurisdiction inquiry is the defendant's relationship to the forum State." Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty., ___ U.S. ___, 137 S. Ct. 1773, 1779

7

(2017). The Supreme Court has identified "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." Id. at 1780 (quoting Goodyear Dunlop Tires Operations, S.C. v. Brown, 564 U.S. 915, 919 (2011)). When the defendant is an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" Id. at 1780 (quoting Goodyear, 564 U.S. at 919). Specific personal jurisdiction, however, "requires that the defendant's contacts with the forum state relate to the challenged conduct." Felland, 682 F.3d at 673. "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" Bristol-Myers, 137 S. Ct. at 1780 (quoting Goodyear, 564 U.S. at 919). "The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." Advanced Tactical, 751 F.3d at 801 (citing Walden v. Fiore, 571 U.S. 277, 284 (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)).

> [N]ot just any contacts will do: "[f]or a state to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." [*Walden v. Fiore*, 571 U.S. 277, 284, 134 S. Ct.] at 1121 [(2014)] (emphasis added). The "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 1126. Furthermore, the relation between the defendant and the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum . . . ." *Id.* at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 . . . (1985)).

Id. "Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." Purdue, 338 F.3d at 780. The due process requirement of "fair warning" to an out-of-state defendant that he might be sued in the forum state "is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum. Burger King, 471 U.S. at 472 (citing Keeton, 465 U.S. at 774). "Such 'purposeful direction' may be shown by evidence that the defendant's actions, even if initiated outside of the forum state, nevertheless were directed at the forum state." Curry, 949 F.3d at 398.

B.    Discussion

Because the defendant is a citizen of Florida, dkt. no. 1-1 at ¶2, the court does not have general jurisdiction over him. The plaintiff must demonstrate that the court has specific personal jurisdiction over the defendant.

In his motion to dismiss, the defendant argues that the plaintiff has not alleged that the defendant engaged in any solicitation or service activities in Wisconsin "'in addition' to those allegedly causing injury . . . ," as required by Wis. Stat. §801.05(4)(a). Dkt. No. 14 at 8. He asserts that the plaintiff has not alleged that the defendant made a promise to the plaintiff to perform services in Wisconsin, because while there was such an agreement, it expired in January 1, 2019; the defendant asserts that "there is no agreement in place to form the basis for the exercise of jurisdiction," as required by Wis. Stat. §801.05(5)(a). Id. at 9-10. He asserts that even if the agreement obligated him to the plaintiff

beyond January 1, 2019, the defendant "was not obligated to perform services in Wisconsin for [the plaintiff] after that date." Id. at 10.

Finally, the defendant argues that even if Wisconsin's long-arm statute provides for personal jurisdiction over the plaintiff, it would violate due process for the court to exercise such jurisdiction. Id. The defendant asserts that at the time of the amended complaint, he had had no physical contact with Wisconsin for over a year. Id. at 11. He asserts that his alleged breach occurred after his employment with the plaintiff had concluded, when he was living in Indiana or Florida. Id. The defendant asserts that if the plaintiff's allegations in this case could give rise to personal jurisdiction, "then any employee who engaged in legitimate contacts with his employer's customers in multiple states could later be haled into court in any of those states." Id. at 12.

The defendant asserts that the plaintiff approached the defendant about selling MCS Transport to the plaintiff. Id. He reiterates that he had not entered Wisconsin in more than a year, and he notes that the parties agreed that Indiana law governed their relationship. Id. at 12-13.

        1.   *Wisconsin Long-Arm Statute*

The amended complaint does not specify which subsections of Wisconsin's long-arm statute the plaintiff believes authorize the court to exercise personal jurisdiction. In his motion to dismiss, the defendant cites §§801.05(4)(a) and (5)(a), dkt. no. 14 at ¶¶7-10, possibly because the plaintiff cited those subsections in the original (and now superseded) complaint (see

Dkt. No. 1-1 at ¶4). In the plaintiff's opposition brief, it cited §§801.05(5)(a) and (5)(b). Dkt. No. 16 at 4, 6.

Wis. Stat §805.01(4)(a) allows Wisconsin courts to exercise personal jurisdiction over an action "claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury . . . [s]olicitation or service activities were carried on within this state by or on behalf of the defendant . . . ." The defendant asserts that "when it is . . . service activities occurring within Wisconsin that give rise to the plaintiff's alleged injury, Wis. Stat. § 801.05(4)(a) does not support the exercise of jurisdiction." Dkt. No. 14 at 8 (citing <u>Dietrich v. Wis. Patients Comp. Fund</u>, 169 Wis.2d 471 (Wis. Ct. App. 1992)). In <u>Dietrich</u>, the Wisconsin Court of Appeals interpreted the words "in addition" to "unambiguously require some activity other than the act or omission outside Wisconsin giving rise to an injury here." <u>Dietrich</u>, 169 Wis.2d at 480. The defendant argues that the plaintiff has not alleged that whatever he did outside the state of Wisconsin that resulted in injury to the plaintiff was accompanied by solicitation or service activities within the state. The plaintiff did not respond to or dispute this argument in its opposition brief.

Wis. Stat. §801.05(5)(a) allows a Wisconsin court to exercise personal jurisdiction in any action that "[a]rises out of a promise, made anywhere to the plaintiff . . . by the defendant . . . to perform services within this state or to pay for services to be performed in this state by the plaintiff." The plaintiff points to

11

Paragraph 3 of the employment agreement, attached to the amended complaint. Dkt. No. 16 at 4. That paragraph says,

> During the employment term, the Employee shall perform duties as are assigned to him by the Company, which will include sales, customer service and such other duties and responsibilities as may be reasonably assigned or delegated to Employee from time to time. During the employment term, the Employee shall devote full time to the faithful and diligent performance of Employee's duties for the Company or for affiliates or other business(3s) of the Company, and at least forty (40) hours per week excluding PTO. Employee shall comply with all instructions, directions and decisions of the Company concerning the carrying out of his duties.

Dkt. No. 12-1 at 1, ¶3. This provision does not show a promise by the defendant to perform services *in Wisconsin.* It does not mention a state or location where the employee's duties must be performed. The plaintiff also cites paragraph 5 of the employment agreement, dkt. no. 16 at 4, which states:

> The Company will allow the Employee to work from a remote worksite, i.e., home, second home, etc., for a specified portion of the work week. The focus of the arrangement is on job performance and meeting operational needs. The Employee must submit a time-specific written request for such remote worksite. Approval of the request is at the sole discretion of the Company. The Employee agrees to be available to travel when his work requires, including to the primary worksite when necessary. The remote worksite should not negatively affect the workload or productivity of coworkers either by shifting burdens or creating delays and/or additional steps in the work flow.

Dkt. No. 12-1 at 2, ¶5. Like paragraph 3, paragraph 5 does not evince a promise to perform services *in Wisconsin.* It does not identify the location of the "primary worksite." It does not explain where "remote" worksites are remote from. Nothing in the employment contract states that the plaintiff will be performing the work contracted for in Wisconsin.

12

That leaves Wis. Stat. §801.05(5)(b), which allows Wisconsin courts to exercise personal jurisdiction over any case that "[a]rises out of services actually performed for the plaintiff by the defendant within this state . . . ." In its opposition brief, the plaintiff argues that it is "undisputed [the defendant] performed substantial services in Wisconsin, including attending customer meetings, sales meetings and budget meetings, and engaging in substantial contacts with [the plaintiff's] customers and employees." Dkt. No. 16 at 6. It also asserts that "[t]hose Wisconsin services were related in part to [the plaintiff's] Wisconsin customer base . . . ." Id. The defendant responds that the plaintiff "does not claim it was injured by any service [the defendant] performed for it in Wisconsin." Dkt. No. 20 at 6.

It is in Wis. Stat. §801.05(5)(b) that the plaintiff's argument that the court has personal jurisdiction under the long-arm statute finds purchase. Contrary to the defendant's assertion, §801.05(5)(b) does not require the plaintiff to allege that it was injured by services the defendant performed for the plaintiff in Wisconsin. It requires only that the plaintiff allege that the "action"—the case—arises out of services the defendant actually performed for the defendant in the state. The lawsuit does generally arise out of services the defendant performed for the plaintiff in the state. The amended complaint alleges that during his employment with the plaintiff, the defendant had regular contacts with the plaintiff's Wisconsin customers. Dkt. No. 12 at ¶14. It alleges that after leaving the plaintiff, the defendant solicited the business of some of those Wisconsin customers in violation of the non-compete. Id. at

13

¶¶24-26. Had the defendant not been employed by the plaintiff, and had he not performed services for the plaintiff in Wisconsin, he would not have had access to the plaintiff's Wisconsin customers when he started his own business and went to work for Partners. The plaintiff's alleged breach of the non-compete arose, in part, because of the work he'd done for the plaintiff in Wisconsin and the information and contacts gleaned from that work.

The court concludes that it has long-arm jurisdiction under Wis. Stat. §801.05(5)(b).

2.    *Due Process*

The allegations in the amended complaint support the due process exercise of personal jurisdiction even more strongly than they support the long-arm exercise of personal jurisdiction. The amended complaint lists numerous contacts between the defendant and Wisconsin—he sold his business to, and contracted for employment with, a Wisconsin company (dkt. no. 12 at ¶¶6-8); his direct supervisors were in Wisconsin (dkt. no. 12 at ¶11); over two years, he traveled to, and stayed overnight in, Wisconsin at least twelve times on business for the plaintiff (dkt. no. 12 at ¶¶12-13); he issued service orders to the plaintiff in Wisconsin, had phone calls with the plaintiff's Wisconsin headquarters and engaged in email communications with Wisconsin customers (id. at ¶14); he solicited business from the plaintiff's Wisconsin customers after the alleged breach and some of that work was to be performed in Wisconsin (id. at ¶¶24-26). Given these allegations, it is hard to credit an argument that the

14

defendant could not have expected to be haled into court in Wisconsin if he violated the employment contract.

The defendant correctly argues that "contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum." Purdue, 338 F.3d at 781 (cited in the defendant's brief, Dkt. No. 14 at 11). If the defendant had signed an employment contract with the plaintiff but never visited Wisconsin on business, never worked with Wisconsin customers, never reported to Wisconsin supervisors, never attended meetings in Wisconsin, this argument would be persuasive. But as the court noted above, the defendant did more than simply contract with a Wisconsin party.

The defendant argues that at the time he filed the brief, he had not had "physical contact with Wisconsin in more than one year." Dkt. No. 14 at 11. It is not clear how this is relevant. First, the Supreme Court has explained that "although territorial presence may indeed be an important factor in many cases, it is by no means essential." Purdue, 388 F.3d at 781. Second, the question is not whether the defendant has minimum contacts with Wisconsin at the time the briefs were filed. The question is whether, at the time of the events described in the amended complaint, the defendant had minimum contacts with Wisconsin sufficient to give him fair warning that he could be sued in Wisconsin in relation to those events. The answer to that question is yes.

15

The defendant argues that his alleged breach occurred after the conclusion of his employment and while he was living in Indiana and Florida; he alleges that the breach did not occur in Wisconsin. Dkt. No. 14 at 11. He says his contacts with Wisconsin all occurred prior to the alleged breach in the course of his employment. Id. He argues that if the court finds personal jurisdiction under these facts, "any employee who engaged in legitimate contacts with his employer's customers in multiple states could later be haled into court in any of those states." Id. at 12 (citing RAR, Inc. v. Turner Diesel, 107 F.3d 1272, 1278 (7th Cir. 1997)).

The decision in RAR does not support the defendant's argument. In RAR, the Seventh Circuit found that while the defendant had dealt with the plaintiff in Illinois (the court being asked to exercise personal jurisdiction), those interactions had not been related to the dispute that gave rise to the case. Id. at 1278. The court stated, "We cannot simply aggregate all of a defendant's contacts with a state—no matter how dissimilar in terms of geography, time, or substance—as evidence of the constitutionally-required minimum contacts," and opined that "when conducting business with a forum in one context, potential defendants should not have to wonder whether some aggregation of other past and future forum contacts will render them liable to suit there." Id. at 1277-78.

The plaintiff does not argue that the defendant's contacts with Wisconsin occurred in a context other than the events that led to this lawsuit. The defendant's contacts with Wisconsin *are* the events that led to this lawsuit. The

facts that he sold his business to a Wisconsin company and joined that company as an employee, agreed that if he left the company he would not compete for customers in (among other places) Wisconsin, spent his years with the company interacting with Wisconsin customers (both in and outside of Wisconsin), then left the company and allegedly solicited business from those Wisconsin customers, *are* the facts that give rise to this case. They *are* the context of this case.

The defendant cites to the court its own decision in Healthfuse, LLC v. CDH Delnor Health Sys., No. 16 cv-560-pp, 2017 WL 927624, *5 (E.D. Wis. Mar. 8, 2017), arguing that, like the defendant in that case, the nature and contacts of this defendant's contacts with Wisconsin are not sufficient to alert him that he could be required to defend a suit here. Dkt. No. 14 at 12. The defendant argues that this court based its decision in Healthfuse that it had no personal jurisdiction over the defendant on the facts that the plaintiff solicited the defendant's business, the defendant never physically entered Wisconsin and the parties agreed that Illinois law would govern their contract. Id. (citing Healthfuse at *18).

The defendant argues that the plaintiff "solicited" his business by approaching him to purchase MCS Transport, citing his declaration. Id. at 12 (citing Dkt. No. 9 at ¶4). He reiterates that at the time he filed the brief, he had not physically entered Wisconsin in a year. Id. at 12-13. Finally, he argues that the parties agreed that Indiana law would govern the employment contract. Id. at 13.

The court found in <u>Healthfuse</u> that "the contacts the plaintiff had with the defendant in Wisconsin were: telephone calls placed to or from the plaintiff's office, emails sent to and from the plaintiff's Wisconsin employees, and payments the defendant sent to Wisconsin related to the services provided by the plaintiff." 2017 WL 927624, at *5. The in-person meetings took place in Illinois and the contract was signed in Illinois. <u>Id.</u> This court cited <u>Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.</u>, 18 F.3d 389, 395 (7th Cir. 1994) in observing that "a contract anticipating no more than contacts by telephone and email, and payments made to the state, likely is not sufficient to establish sufficient minimum contacts." <u>Id.</u> at *6.

The defendant's comparison of his contacts with Wisconsin to the defendant's in <u>Healthfuse</u> is strained at best. Even if the plaintiff did approach the defendant about buying MCS Transport, the defendant agreed to become an *employee* of the plaintiff, knowing that it was a Wisconsin company. In contrast to the <u>Healthfuse</u> defendant, who never had representatives travel to Wisconsin during the contractual relationship, the defendant traveled to Wisconsin numerous times on business, both for day trips and for overnight trips. His supervisors were in Wisconsin. He worked with Wisconsin customers. The employment contract was not a contract that anticipated nothing more than contacts by phone and email and payments from Wisconsin. This is a contract that anticipated *work* in Wisconsin, with *Wisconsin* customers under *Wisconsin* supervision.

18

It does not offend due process to require the defendant to defend against this suit in Wisconsin.

## IV. Venue

In the event that the court denied the motion to dismiss for lack of personal jurisdiction, the defendant asked in the alternative for the court to transfer the litigation to the Northern District of Indiana.

### A. Venue—28 U.S.C. §1391(b)(1)

In federal courts, venue is appropriate either in the judicial district where "any defendant resides, if all defendants are residents of the State in which the district is located," or in the district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b).[2]

The complaint alleges that venue is proper "because a substantial part of the events giving rise to the claim occurred in Wisconsin." Dkt. No. 12 at ¶5. The defendant asserts that he does not live in Wisconsin and never has done and that at the time of the motion, he had not been to Wisconsin in more than a year. Dkt. No. 14 at 13. He asserts that the amended complaint does not

---

[2] The plaintiff asserts that because the case was removed from state to federal court, 28 U.S.C. ¶1441(a) governs whether venue is proper. Section 1441(a) governs the district to which a state court case must be removed in the first place—a state case can be removed only to the federal district that encompasses the place where the state case was filed. That does not mean that venue may not be improper under §1391. Imagine a California plaintiff who files suit against Nevada defendants in Milwaukee County Circuit Court for events that occurred in California and Nevada. Under §1441(a), the Nevada defendants could remove the case to only one federal court—the Eastern District of Wisconsin. But venue would not be proper there under §1391 if none of the defendants reside in Wisconsin and none of the events giving rise to the claims in the complaint occurred there.

identify any acts he understood in Wisconsin and asserts that any alleged breach took place either in Florida (where he now lives) or Michigan. Id.

As the court already has explained, a substantial part of the events giving rise to the claim in this case occurred in Wisconsin. The defendant worked for a company based in Wisconsin. He provided services to customers in Wisconsin while employed by the plaintiff and traveled to Wisconsin multiple times to perform this work. He interacted with other representatives of the plaintiff's company in Wisconsin and reported to supervisors in southeast Wisconsin. While the defendant also appears to have performed work from other states and districts, he did so on behalf of his Wisconsin employer. He allegedly successfully solicited the business of Rock Solid, a Wisconsin corporation, for work performed in Beloit, Green Bay and Milwaukee. Dkt. No. 12 at ¶26. Venue is proper in the Eastern District of Wisconsin.

B.    Transfer of Venue—28 U.S.C. §1404

The defendant argues that even if the court finds that venue is proper in the Eastern District of Wisconsin, it is "more appropriate" in the Northern District of Indiana, citing 28 U.S.C. §1404(a). Dkt. No. 14 at 14. Section 1404 states that "a district court may transfer any civil action to any other district or division where it might have been brought" upon consideration of "the convenience of parties and witnesses" and "the interest of justice[.]" "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp.,

487 U.S. 22, 29 (1988) (quoting <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 622 (1964)). "The statute permits a 'flexible and individualized analysis' and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." <u>Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.</u>, 626 F.3d 973, 978 (7th Cir. 2010) (quoting <u>Stewart</u>, 487 U.S. at 29).

 The defendant argues that while he does not reside in Wisconsin and had not been in Wisconsin for a year at the time of the motion, the plaintiff owned and operated a "terminal" in Indianapolis and had employees there. Dkt. No. 14 at 15. He asserts that "[w]hile [the plaintiff] may have booked its alleged losses in records kept in Wisconsin, [the defendant's] acts about which [the plaintiff] complains apparently occurred in Indiana, Michigan, or Florida—not Wisconsin." <u>Id.</u> He asserts that the plaintiff sought him out in Indiana, bought property in Indiana, paid the defendant in Indiana and agreed to have Indiana law govern any disputes over the employment contract. <u>Id.</u> He alleges that one of the customers the plaintiff claims he solicited "apparently has offices in Indiana." <u>Id.</u> The defendant's motion states that "[t]here is no question regarding whether Hribar could have filed this lawsuit in Indiana: it could have." <u>Id.</u> at 14. The parties' employment contract includes a choice of law provision that names Indiana law as the governing law of the contract. <u>Id.</u> at 16; Dkt. No. 12-1 at ¶15. The defendant also asserts that his "acts about which [the plaintiff] complains apparently occurred in Indiana, Michigan, or Florida," "[the plaintiff] sought out [the defendant] in Indiana" and one of the customers

identified by the plaintiff's amended complaint has offices in Indiana. Id. at 15. The defendant also argues that "in all probability" the district court for the Northern District of Indiana is more familiar with Indiana law than is this court. Id. at 16.

The only mention of Indiana in the amended complaint is the plaintiff's assertion that the term "competitor" in the contract referenced businesses providing trucking services in ten states, including Indiana. Dkt. No. 12 at ¶17. The contract mentions Indiana twice—when defining "competitor" (Dkt. No. 12-1 at ¶8(a)(4)) and in the choice-of-law provision (Dkt. No. 12-1 at ¶15). The facts the defendant asserts in support of his request to transfer the case to the Northern District of Indiana come from his own declaration, and they reference only the *state* of Indiana, not a specific location. Dkt. No. 9. Indiana has two federal judicial districts, the Northern and the Southern. The only city in Indiana mentioned in the defendant's motion is Indianapolis, where he asserts the plaintiff has a "terminal" and employees. Dkt. No. 14 at 15. Indianapolis is in the *Southern* District of Indiana. https://www.insd.uscourts.gov/. It is not clear why the defendant asserts so vehemently that the plaintiff could have filed this suit in the *Northern* District of Indiana.[3]

Nor has the defendant demonstrated that the §1404 factors weigh in favor of transferring the case to the Northern District of Indiana.

---

[3] The Northern District of Indiana has courthouses in Hammond, Lafayette and South Bend. https://www.innd.uscourts.gov/.

1. *Convenience of the Parties and Witnesses*

Section 1404 begins by stating that the court may transfer venue "[f]or the convenience of parties and witnesses." In considering the convenience factor, "courts generally consider the availability of and access to witnesses," "each party's access to and distance from resources in each forum[,]" "the location of material events[,] and the relative ease of access to sources of proof[.]" Research Automation, 626 F.3d at 978 (citations omitted). Courts give greater deference to the plaintiff's choice of forum when the plaintiff has chosen its home forum. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981) ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient.").

a. Availability of and access to witnesses

The defendant has not explained which witnesses would be located in Indiana (though he says that one of the plaintiff's customers which the defendant allegedly poached had "offices" in Indiana) or where, or why having the case in the Northern District of Indiana would make witnesses more available and accessible.

b. Access to and distance from resources in each forum

The plaintiff is headquartered in Wisconsin and the defendant lives in Florida. Whether the case is the Eastern District of Wisconsin or the Northern District of Indiana, the defendant will have to travel a significant distance to attend any in-person court proceedings. The defendant's assertions in his declaration that he used to live in Indiana, that before he sold TCS Transport it

23

was an Indiana company and that he received his pay and paid taxes in Indiana have little to do with whether he would have access to, or would be distant from, resources during the litigation. Presumably the plaintiff's access to resources in Wisconsin is greater than it would be in Indiana.

c. Location of material events

The events of this case occurred in several states. The defendant asserts that his alleged solicitations would have been made from Indiana, Michigan or Florida and that the initial discussions between the parties began in Indiana. Dkt. No. 14 at 15. The plaintiff asserts that the defendant worked with Wisconsin customers during his employment and solicited them after, as well as working with and soliciting customers in other states. This factor does not weigh heavily for or against Indiana.

d. Relative ease of access to sources of proof

The defendant is a former employee of a company with its primary offices in southeastern Wisconsin. The defendant makes the vague assertion that "it is likely there are witnesses and documents relevant to the dispute in Indiana." Dkt. No. 20 at 9. In support of this assertion, he offers only that one of the companies he allegedly solicited has offices in Indiana. Id. Again, he does not say where in Indiana these witnesses or documents might be located.

The court assumes that there will be sources of proof in several locations. Some of the proof likely will come from Wisconsin, where the plaintiff is headquartered, where the defendant's supervisors were located, where the defendant attended meetings and where customers he solicited are located.

24

Some may be in other states in which the defendant conducted business for the plaintiff or where he allegedly solicited the plaintiff's customers after he left the plaintiff. Some may be in Indiana. Some may be in Florida, where the defendant lives. The fact that there may be sources of proof in many places does not favor moving the case to the Northern District of Indiana.

2. *Interests of Justice*

This prong of the transfer analysis "relates to the efficient administration of the court system." Research Automation, 626 F.3d at 978. "[C]ourts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums, each court's relative familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy." Id. "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." Id.

a. Docket congestion and likely speed to trial

The defendant has provided no statistics indicating that the Northern District of Indiana's docket is less congested than this court's docket.

b. Familiarity with the relevant law

The parties' employment agreement states that it is governed under the laws of Indiana. Dkt. No. 12-1 at ¶15. The court agrees with the defendant that the court for the Northern District of Indiana would be more familiar with the contract laws of Indiana than this court.

25

The Eastern District of Wisconsin has a strong relationship to this case and an interest in resolving the controversy. The plaintiff is a business in southeastern Wisconsin alleging that the defendant caused it to lose customers, including customers in southeastern Wisconsin. None of the parties currently reside in the Northern District of Indiana. The defendant's relationship to Indiana is dated and again, there is no indication that he had a particular relationship with the *Northern* District of Indiana.

Because only one factor weighs in favor of transferring the case and the court is unsure whether the case could have been brought in the Northern District of Indiana, the court will deny the defendant's motion to transfer venue.

## V.   Conclusion

The court **DENIES** the defendant's motion to dismiss for lack of personal jurisdiction. Dkt. No. 13.

The court **DENIES** the defendant's motion to transfer venue. Dkt. No. 13.

Dated in Milwaukee, Wisconsin this 29th day of September, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

26