UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

HRIBAR TRANSPORT LLC,

        Plaintiff,

v.

        Case No. 20-cv-1255-pp

MICHAEL SLEGERS,

        Defendant.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND PLEADINGS TO ADD ADDITIONAL PLAINTIFFS UNDER FED. R. CIV. PRO. 15(A)(2) (DKT. NO. 31)**

---

On July 8, 2020, the plaintiff filed a complaint in Racine County Circuit Court accusing the defendant of breaching a noncompetition clause of the contract between the parties. Dkt. No. 1-1. The next month, the defendant timely removed the case from Racine County to the Eastern District of Wisconsin. Dkt. No. 1. The plaintiff filed an amended complaint on September 18, 2020, still alleging only a single claim for breach of contract. Dkt. No. 12.

Nearly twenty-one months after filing the amended complaint and just short of two years after filing the original complaint, the plaintiff filed a motion for leave to amend the pleadings to add plaintiffs. Dkt. No. 31. The court will deny that motion.

**I.    Procedural History**

The plaintiff's complaint reached federal court on August 14, 2020. Dkt. No. 1. On August 31, 2020, the defendant filed a motion to dismiss for lack of

1

jurisdiction or, in the alternative, to transfer the case to the Northern District of Indiana, dkt. no. 8, after which the plaintiff filed its amended complaint, dkt. no. 12. Shortly thereafter, the defendant filed a motion to dismiss the amended complaint, again asserting lack of jurisdiction and alternatively asked the court to transfer the court to the Northern District of Indiana. Dkt. No. 13. The plaintiff opposed the motion, dkt. no. 16, and the court denied it, dkt. no. 21.

The defendant then filed his answer. Dkt. No. 22. The parties filed a joint Rule 26(f) plan, suggesting a discovery deadline of May 1, 2022 and a dispositive motions deadline of June 3, 2022. Dkt. No. 24. The plan also included an agreement that "[t]he parties reserve[d] the right to amend their pleadings as allowed by the federal rules." Dkt. No. 24 at ¶2. Subsequently the parties filed a joint motion to modify the scheduling order, extending the discovery deadline to July 22, 2022 and the dispositive motions deadline to September 15, 2022. Dkt. No. 29. The motion did not mention amending the pleadings. The plaintiff filed its motion for leave to file a second amended complaint on June 16, 2022, a month before the scheduled close of discovery. Dkt. No. 31. The defendant opposes the motion. Dkt. No. 34. The plaintiff filed a reply in support of the motion. Dkt. No. 38.

## II.  Motion for Leave to File Second Amended Complaint

### A.  The Applicability of Rule 16(b)

At the outset, the court will address the defendant's argument that the plaintiff filed the motion for leave to amend "after the time permitted by the Court's scheduling order." Dkt. No. 34 at 1. Operating under this assumption,

the defendant asserts that first, the plaintiff must demonstrate good cause, or diligence, as required by Fed. R. Civ. P. 16(b). Id. (Presumably the defendant is referring to Rule 16(b)(4), which states that a scheduling order "may be modified only for good cause and with the judge's consent.") He asserts that if the plaintiff can make that showing, the plaintiff then must comply with Rule 15(a) (which governs amendments to the pleadings prior to trial). Id.

The plaintiff did not file its motion for leave to amend "after the time permitted by the Court's scheduling order." The original joint Rule 26(f) plan stated only that "[t]he parties reserve the right to amend their pleadings as allowed by the federal rules." Dkt. No. 23 at ¶2. Because the parties did not specify a deadline by which pleadings must be amended (or a party must seek leave to amend), the court didn't include such a deadline in the scheduling order. See Dkt. No. 25. The joint motion to amend the scheduling order did not discuss a deadline for amending pleadings, dkt. no. 29, so the order granting that motion didn't either, dkt. no. 30. Rule 16(b)(4) does not apply.

Under Rule 15(a)(1), prior to trial a party may amend a pleading one time, as a matter of course and without leave of court, under two circumstances: (A) "21 days after serving [the pleading]"; or (B) "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Otherwise, the party may amend "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The plaintiff seeks leave of court under Rule 15(a)(2). See Dkt. No. 32 at 3.

3

Under Rule 15(a)(2), "[t]he court should freely give leave when justice so requires." "The Federal Rules of Civil Procedure grant district courts 'broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." Financial Fiduciaries, LLC v. Gannett Co., Inc., No. 21-2016, 2022 WL 3585003, at *8 (7th Cir. Aug. 22, 2022) (quoting Arreola v. Godinez, 546 F.3d 788, 796 (7th Cir. 2008)).

Rule 15(a) applies to amendments made before trial. Otherwise, it contains no deadlines by which one must file a motion for leave to amend a pleading. The plaintiff did not file its motion after any court-imposed, or federal rule-mandated, deadline.

B. The Parties' Arguments

The proposed second amended complaint seeks to add Hribar Logistics, LLC and Hribar Bros., Inc. as plaintiffs. Dkt. No. 31-1. At paragraphs 2 through 4, the proposed second amended complaint provides jurisdictional information for Hribar Logistics, LLC and Hribar Bros., Inc. Id. at ¶¶2-4. In paragraphs 9 and 10, it explains the connection between the plaintiff, the defendant and two proposed new plaintiffs. Id. at ¶¶9-10. Throughout the proposed second amended complaint, the word "Plaintiff" has been changed to "Plaintiffs" where necessary. Finally, the request for injunctive relief that appeared in the amended complaint has been removed from the proposed second amended complaint. Id. at 7. The proposed second amended complaint,

4

like the complaint and the amended complaint, asserts a single claim for breach of contract. Id. at 6-7.

The plaintiff describes Hribar Logistics and Hribar Bros. as "sister companies, with common ownership" with Hribar Transport (the original plaintiff); it asserts that each of the three companies is a third-party beneficiary under the defendant's employment agreement and has been damaged by the defendant. Dkt. No. 32 at 1. The plaintiff recounts that it sued the defendant "for violating his restrictive covenant and related provisions of his employment agreement." Id. at 3. It asserts that the defendant "pursued discovery inquiring into the organization of the various affiliated Hribar companies." Id.

The plaintiff explains that it designated a witness on expert damages; that witness produced a report analyzing the damages that the plaintiff alleges were caused by the defendant's breach of the noncompete "that flowed through to Hribar Transport and Hribar Bros." Id. The plaintiff explains that the customers it alleges that the defendant successfully solicited "historically generated revenue for both Hribar Transport and Hribar Bros." Id. The plaintiff says that during the expert's deposition, the defense "focused substantial questioning on how [the expert] could calculate damages for a 'non-party' to the litigation." Id. The plaintiff says it is seeking to add Hribar Logistics and Hribar Bros. "[a]s a result of [the defendant's] line of questioning, and to ensure the potential recovery of all alleged damages caused by [the defendant's] violation of his restrictive covenant." Id. The plaintiff asserts that because Hribar Logistics and Hribar Bros. are third-party beneficiaries of the employment

5

agreement's restrictive covenants, "justice requires that they be added as additional plaintiffs with Transport." Id. at 4. It says that if the court does not allow these two companies to be added as plaintiffs, it would "emasculate the impact of [the defendant's] restrictive covenant and allow [the defendant] to escape the full consequences of his actions." Id. at 5.

The plaintiff asserts that the defendant will not be prejudiced by the amendment because it filed its answer to the amended complaint "relatively recent[ly]." Id. It also points out that the second amended complaint does not add any allegations or claims. Id. It asserts that allowing it to file the second amended complaint will not slow the litigation, because at the time it filed the motion, much discovery had been completed and discovery was slated to close in just over a month, with no trial date having been set. Id. at 6. Finally, it indicated that if the defendant requested "a reasonable extension of the discovery deadline or dispositive motion deadline in light of the amendment," the plaintiff would not object. Id.

The defendant responds that that allowing the plaintiff to file the proposed second amended complaint would cause undue delay, would be prejudicial and is futile. Dkt. No. 34 at 13. He asserts that he executed the first employment agreement in December 2011 and that it didn't mention Hribar Logistics or Hribar Bros. Id. at 4. He says he executed a second agreement in 2013, and again, the agreement did not mention Hribar Logistics or Hribar Bros. Id. The third agreement, effective January 1, 2014, is the one that contained the noncompete; it did not mention Hribar Logistics or Hribar Bros.

6

Id. at 5. The defendant claims that all three agreements were drafted by the plaintiff. Id. The defendant explains that after he was told that "Hribar had no interest in renewing the contract" and that he would be a "regular employee [] like everybody else," he got a letter from Hribar Logistics explaining his pay and benefits. Id. at 5-6. The defendant provides extensive detail about further contract negotiations, but says that he "never signed a new employment agreement with a Hribar entity and never signed another non-compete provision with Hribar Transport or any other Hribar entity." Id. at 6-7. The defendant says that when the plaintiff filed this lawsuit in Racine County in July 2020, it chose to list only Hribar Transport as the plaintiff. Id. at 7. He says that only Hribar Transport was listed as the plaintiff in the amended complaint. Id.

The defendant says that the parties have produced over 5,000 pages of documents and conducted ten depositions, and that as of the date he filed his response, expert discovery was "nearing completion." Id. at 8. He agrees that he sought discovery about the "interplay between the various Hribar entities." Id. He says that on April 22, 2022, the plaintiff's counsel sent the defendant a proposed motion for leave to amend that would have added only Hribar Logistics, but the defendant responded that he would oppose such a motion. Id. at 9. Discovery continued, including expert discovery. Id. The defendant says that when it was revealed during the plaintiff's damages expert's deposition that the way the Hribar entities did their accounting made it

7

impossible for the expert to isolate damages incurred only by Hribar Transport, the plaintiff was prompted to file the instant motion. Id.

The defendant argues that the plaintiff's motion has caused undue delay. Id. at 13. He says that because the plaintiff knew before the litigation of the relationship between the three entities, waiting two years after filing the complaint to seek to add Hribar Logistics and Hribar Bros. constitutes undue delay; he asserts that the delay was not based on the plaintiff learning new information or evidence. Id. at 14. He says he would be prejudiced by the amendment, characterizing it as a "seismic shift in the case." Id. He asserts that the plaintiff's effort to "add additional avenues of recovery is prejudicial," and asserts that there must come a time when a plaintiff commits to its theory of the case. Id. at 15. He asserts that he would be prejudiced by having to re-conduct discovery, because some of his discovery "has been tailored to defending against Hribar Transport's claim of damages." Id. at 16. He says that if the court "finds" that Hribar Logistics and Hribar Bros. are third-party beneficiaries to the noncompete, he will "need to examine the reasonableness of the restrictions in the non-compete as related to Hribar Logistics and Hribar Bros. and the legitimate interest of these entities in restraining the trade of [the defendant]." Id. He describes the plaintiff's motion as an attempt to amend only after realizing that the defendant has a defense to its damages claim, characterizing this as "gamesmanship." Id. at 17.

The defendant also asserts that it would be futile to allow the plaintiff to amend because Hribar Logistics and Hribar Bros. are not third-party

8

beneficiaries to the contract. Id. at 18. He urges the court to review Seventh Circuit caselaw and analyze the third-party beneficiary issue. Id. at 18-22.

The plaintiff replies that it filed its motion "eight months after substantive litigation began in this case." Dkt. No. 38 at 1. It says its intent in doing so is "solely to ensure Hribar can recover all damages caused by [the defendant's] breach of the covenant, including damages to Hribar Transport's related entities that also provided trucking services to the customers [the defendant] solicited." Id.

The plaintiff characterizes the litigation as being, "at most, mid-way through, with no trial date set." Id. at 4. It says it moved to amend the complaint "when it became apparent during discovery that, despite knowing the working connection among the Hribar affiliates, [the defendant] was going to object to plaintiff's damage calculations." Id. at 5. The plaintiff asserts that the defendant knew that he was working "for all the Hribar companies" and that he can't be surprised that the damages would include the plaintiff and the two affiliates. Id. The plaintiff says that even if it could have filed the motion for leave to amend earlier than it did, delay itself doesn't warrant denial. Id. at 5.

The plaintiff also argues that amendment would not prejudice the defendant. Id. at 6. It emphasizes that it is not adding substantive claims, or changing them, and notes that the summary judgment deadline has not passed. Id. It pooh-poohs the defendant's assertion that he will have to reconduct discovery, asking "Why?" Id. at 7. It says that the defendant has known of the entities' interlocking roles for years and that if the plaintiff

9

prevails, the defendant will be prejudiced only in that he will be liable for all the damages his conduct caused. Id.

Finally, the plaintiff argues that amendment would not be futile. Id. at 8. It says that the entities are in privity with each other because they have the same owners and the same interest "in the overall Hribar trucking company." Id. It asserts that the companies operate "as a unified whole under the name of 'Hribar' and/or 'Amston.'" Id. at 9. It points to the "Duties" portion of the employment agreement, which obligates the "Employee" to "devote full time to the faithful and diligent performance of Employee's duties for the Company *or for affiliates or other business(es) of the Company . . .*," in support of its claim that Hribar Logistics and Hribar Bros. are third-party beneficiaries of that agreement. Id. (citing Dkt. No. 12-1 at 1) (emphasis added). It argues that the defendant improperly cited a pre-2007, unpublished Seventh Circuit case in support of his argument against the third-party beneficiary theory. Id. at 11.

C.  Analysis

1.  *Undue Delay*

Although the plaintiff asserts that nothing much was happening in the case until eight months before it filed the motion for leave to amend, the docket indicates otherwise. Only a couple of weeks after removing the case to federal court, the defendant filed a motion to dismiss. The parties weren't required to fully brief that motion; the court issued an order reminding the plaintiff that it could amend in lieu of filing an opposition brief. Dkt. No. 10. The plaintiff elected to amend, and less than three weeks later, the defendant filed another

10

motion to dismiss—one that the parties fully briefed. The issue in both motions was jurisdiction, but the point is that there was active litigation going on for some twenty-two months before the plaintiff filed the motion for leave to amend. The plaintiff has not denied that it knew about the relationship between itself, Hribar Logistics and Hribar Bros. before the litigation began, nor has it denied that it knew about any relationship Hribar Logistics and Hribar Bros. had to the defendant. It insists that the defendant knew that his actions harmed all three entities, but if that is true, then the *plaintiff* knew that, as well, yet it did not list those entities as plaintiffs in either the original or the amended complaint. Almost two years is a significant delay.

       2.    *Undue Prejudice*

It is debatable whether the plaintiff's request to file a second amended complaint at this stage in the litigation would cause "undue" prejudice to the defendant. The motion seeks only to add as plaintiffs two affiliate companies of whom the defendant has been aware for some time; it does not add claims or modify the one claim asserted in the original and amended complaints. The defendant says the plaintiff seeks to amend for one reason only: to cure the fact that it has realized that there is a weakness in its damages claim, it seeks to "open avenues of recovery that it has never alleged." Dkt. No. 34 at 15, 17. Even if that is true—and it appears to be—it is not clear why that, in itself, is "unduly" prejudicial. Often an amended complaint causes some prejudice to the defendant, by presenting new avenues for liability or damages. The defendant alleges that he will be forced to reconduct discovery "aimed at

11

defending against the new avenues of claimed damages." Id. at 16. The court, of course, knows far less about the case than the parties do, but given the amount of discovery that already has taken place, it seems unlikely that the defendant would be required to "reconduct" all discovery, and more likely that he might need to do a limited amount of *additional* discovery (although the parties both assert that the defendant has investigated the relationship among the three entities already).[1]

### 3. *Futility*

Finally, the defendant argues that allowing the plaintiff to file the second amended complaint would be futile because Hribar Logistics and Hribar Bros. are not third-party beneficiaries to the defendant's employment agreement with Hribar Transport.[2] Id. at 18. The parties to the January 1, 2014 employment agreement are Hribar Transport, LLC and the defendant. Dkt. No. 12-1 at 1, 6. The agreement defines the "Company" as Hribar Transport, LLC, and the

---

[1] The defendant characterizes the plaintiff's motion for leave to amend as "gamesmanship." Dkt. No. 34 at 17. The plaintiff and the defendant each have on their legal team experienced, well-respected Milwaukee lawyers who practice frequently before this court and participate in bar activities together. The court hopes that going forward, counsel will continue to zealously and thoroughly advocate for their clients without casting aspersions on the moral or ethical motivations of the parties or their counsel.

[2] In its reply brief, the plaintiff asserts that court need not resolve the third-party beneficiary issue to resolve its motion for leave to file the second amended complaint. Dkt. No. 38 at 2. Presumably it makes this assertion because it believes the court can resolve the motion by finding that there was no undue delay and that the amendment would not result in undue prejudice to the defendant. But the case law gives a court broad discretion to deny a motion for leave to amend for a variety of reasons. Even if there is no undue delay or undue prejudice, a court may still deny leave to amend if it concludes that amendment would be futile.

"Employee" as defendant Michael Slegers. Id. at 1. The non-competition clause of the agreement states,

> 8. **Agreement Not to Compete.**
>
> (a) The Employee acknowledges that the Company's business and customer contacts are established and maintained at great expense and that the Employee would be able to compete unfairly with the Company unless the Employee is subject to the restrictions contained herein. As a result, the Employee agrees to the restrictions set forth below and shall not, during the term of the Employment Agreement and for a period of two (2) years thereafter:
>
> (1) Acquire an ownership interest in, work for, render advice or assistance to or otherwise engage in or enter into any aspects of the business of any "Competitor' (as defined below); or
>
> (2) Contact, solicit or entice, or attempt to contact, solicit or entice, any "Customer" of the Business so as to cause, or attempt to cause, any of said Customers not to do business with the Buyer or to purchase services sold by the Buyer from any source other than the Buyer; or
>
> (3) Perform any trucking, hauling or transportation services for a Customer; or
>
> (4) Induce, or attempt to induce, any person who is then currently an employee of the Buyer and was previously an employee of Seller, to accept employment with the Seller, the Shareholder, any affiliate of the Seller or a competitor.

Id. at 3, ¶8.

The agreement defines "Customer" as "those persons or entities to whom Employee or the Company provided services during the term of the Employment Agreement." Id. at ¶8(a). It does not define "Business," "Buyer," "Seller" or "Shareholder." On its face, the agreement obligates the defendant to

13

refrain from competing with "the Business" (undefined) and the "Company" (defined as Hribar Transport, LLC, id. at 1).

The plaintiff argues that the employment agreement "directly and substantively imposes [the defendant's] duties for and for the benefit of Hribar Transport and all Hribar affiliates, including Hribar Logistics and Hribar Bros." Dkt. No. 32 at 5. It claims that the agreement "evinces its specific intent to make those affiliates, including Hribar Logistics and Hribar Bros., intended beneficiaries, within the specific class the agreement was intended to benefit— the Hribar companies" Id. In support of these contentions, the plaintiff points to paragraph 3 of the employment agreement. Id. at 3, 5. Paragraph 3 reads:

> 3. **Duties**. During the employment term, the Employee shall perform duties as are assigned to him by the Company, which will include sales, customer service and such other duties and responsibilities as may reasonably be assigned or delegated to Employee from time to time. During the employment term, the Employee shall devote full time to the faithful and diligent performance of Employee's duties for the Company or for affiliates or other business(es) of the Company, and at least forty (40) hours per week excluding PTO. Employee shall comply with all instructions, directions and decision of the Company concerning the carrying out of his duties.

Dkt. No. 12-1 at 1, ¶3.

This paragraph requires the defendant to perform the described duties not only for the plaintiff, but "for affiliates or other business(es)" of the plaintiff. But the plaintiff interprets ¶3 to include among the defendant's "duties" the ¶8 agreement not to compete. It is hard to reconcile this interpretation with the language of the agreement. Paragraph 3 describes typical job-related duties such as sales and customer service; ¶8 describes an agreement *not* to do

14

something, something that would be outside of an employee's typical job duties (competing with one's employer).

Both ¶3 and ¶8 reference the "employment term." Id. The "employment term" is defined in ¶2 of the agreement, which states, "[t]he employment term shall commence as of the Effective Date and shall continue until January 1, 2019." Id. at ¶2. The "Effective Date" is defined as January 1, 2014. Id. at ¶1(c). Paragraph 3 required the defendant to perform the described "duties" "[d]uring the employment term." The amended and proposed second amended complaints both allege that a December 28, 2018 letter, coupled with the defendant's continued employment, extended the term of the agreement through the defendant's August 15, 2019 resignation date. Dkt. No. 12 at ¶¶9-10; Dkt. No. 31-1 at ¶¶12-13. Paragraph 8 states that the defendant agreed not to compete "during the term of the Employment Agreement and for a period of two (2) years thereafter." Id. at ¶8. If not competing was one of the "duties" described in ¶3, then the reference to "during the term of the Employment Agreement" in ¶8 would be superfluous (or redundant). Under Wisconsin law, "[a] contract must 'be construed so as to give a reasonable meaning to each provision of the contract' and so as to avoid 'render[ing] portions of a contract meaningless, inexplicable or mere surplusage.' *Goebel v. First Fed. Sav. & Loan Ass'n of Racine*, 83 Wis. 2d 668 . . . (Wis. 1978)." Foskett v. Great Wolf Resorts, Inc., 518 F.3d 518, 522 (7th Cir. 2008).

Similarly, the "duties" paragraph applies "[d]uring the employment term." Dkt. No. 12-1 at ¶3. If not competing was one of the "duties" described in ¶3,

15

that duty would have expired at the end of the employment term—as of January 1, 2019 or August 15, 2019. Both the amended complaint and the proposed second amended complaint allege that the defendant began competing with the plaintiff starting September 9, 2019—subsequent to both of those dates. Dkt. No. 12 at ¶22; Dkt. No. 31-1 at ¶25. Anything the defendant allegedly did after the "employment term" ended—whether on January 1, 2019 or on August 15, 2019—could not have constituted a "duty" under ¶3. And if actions the defendant took after the end of the employment term *did* constitute a duty under ¶3, then the agreement is confusing, because the "duties" paragraph is confined to the employment term, while the "agreement not to compete" paragraph applies during the term of the employment agreement and for two years thereafter. The plaintiff's interpretation would render the combination of ¶¶3 and 8 inexplicable.

The plaintiff also argues that Hribar Logistics and Hribar Bros. are third-party beneficiaries of "[the defendant's] restrictive covenant obligations under the employment agreement." Dkt. No. 32 at 4. Citing <u>Becker v. Crispell-Snyder, Inc.</u>, 316 Wis. 2d 359 367 (Wis. Ct. App. 2009), the plaintiff defines a third-party beneficiary as "one who the contracting parties intended to directly and primarily benefit from a contract." <u>Id.</u> It says that a third-party beneficiary proves its status by "pointing to specific language in the contract establishing intent." <u>Id.</u> The plaintiff argues that a third-party beneficiary may enforce a contract "if the contract indicates that he or she was either specifically intended by the contracting parties to benefit from the contract or is a member

16

of the class the parties intended to benefit." Id. (citing Meleski v. Schbohm, 341 Wis. 2d 718, 720-21 (Wis. Ct. App. 2012)). And the plaintiff asserts that "[t]he fact that no particular third party is designated in a contract is not critical, where a third party demonstrates that it is a member of a class of intended beneficiaries." Id. at 5 (citing Mercado v. Mitchell, 83 Wis. 2d 23, 29 (Wis. 1978)). The plaintiff concludes that in this case, "of course, the employment agreement clearly identifies Hribar's affiliates." Id.

The first problem with this argument is that the agreement is governed by Indiana, not Wisconsin, law. Dkt. No. 12-1 at ¶15. The plaintiff's brief in support of its motion cited only Wisconsin and federal law, but the plaintiff's reply brief tacitly concedes the point by citing Indiana law. Dkt. No. 38.

The next problem is that the language of the noncompete clause does not evidence an intent by the parties to benefit Hribar Logistics or Hribar Bros. Under Indiana law, "[a] third party beneficiary may directly enforce a contract." Eckman v. Green, 869 N.E.2d 493, 496 (Ind. Ct. App. 2007). To enforce a contract as a third-party beneficiary, the third party must show:

> (1) A clear intent by the actual parties to the contract to benefit the third party;
> (2) A duty imposed on one of the contracting parties in favor of the third party; and
> (3) Performance of the contract terms is necessary to render the third party a direct benefit intended by the parties to the contract.

Celadon Trucking Servs., Inc. v. Wilmoth, 70 N.E.3d 833, 844 (Ind. Ct. App. 2017) (quoting Eckman, 869 N.E.2d at 496). "The intent to benefit the third-party is the controlling factor and may be shown by specifically naming the third-party or by other evidence." Eckman, 869 N.E.2d at 496.

17

The employment agreement does not specifically name Hribar Logistics or Hribar Bros. The noncompete agreement in ¶8 does not specifically name Hribar Logistics or Hribar Bros. Even ¶3, the "duties" paragraph, does not specifically name Hribar Logistics or Hribar Bros.; it mentions only "affiliates or other business(es)" of the plaintiff. Dkt. No. 12-1 at ¶3. To satisfy the first element, then, the plaintiff must provide some "other evidence" to show that the actual parties—Hribar Transport and the defendant—intended the contract to benefit Hribar Logistics and Hribar Bros.

The plaintiff asserts that this evidence is the "affiliates or other business(es)" language in ¶3. That language shows that the parties intended the defendant's performance of his ¶3 duties to benefit affiliates and other businesses of the plaintiff, and the parties do not dispute that Hribar Logistics and Hribar Bros. are "affiliates" or "other businesses" of Hribar Transport. But as the court has explained, the contract does not indicate that not competing was one of those duties.

Finally, performance of ¶3 was necessary to render the "affiliates" and "other businesses" the benefit of the defendant's performance of his duties. But the same is not true of ¶8, the noncompete clause. That clause does not confer a benefit on "affiliates" or "other businesses." The defendant's performance of the noncompete agreement was not necessary to render any third party the direct benefits intended by ¶3.

This conclusion is compelled by the way Indiana views noncompete agreements. Under Indiana law, because noncompete "'agreements "are in

18

restraint of trade," courts enforce them only if they are reasonable.'" Carroll v. Long Tail Corp., 167 N.E.3d 750, 756 (Ind. Ct. App. 2021) (quoting Heraeus Med., LLC v. Zimmer, Inc., 135 N.E.3d 150, 153 (Ind. 2019)). "'Noncompetition agreements "in employment contracts are in restraint of trade and disfavored by the law."'" Id. "'These agreements are thus strictly construed against employers.'" Id. To construe the noncompete agreement in ¶8 as showing an intent to confer a benefit on Hribar Logistics and Hribar Bros. that it does not mention, or to try to contort the benefit intended to be conferred on "affiliates" and "other businesses" of the plaintiff in ¶3 to force it to encompass the noncompete agreement in ¶8, would contravene Indiana law.

Finally, in its reply brief, plaintiff asserts that "[t]hose in privity with a contracting party have rights under the contract." Dkt. No. 38 at 8. The plaintiff defines privity—"a mutual or successive relationship to the same right of property, or an identification of interest of one with another as to represent the same legal right," and then argues that the plaintiff's affiliates "are in privity with one another as they have the same owners and the same interest in the overall Hribar trucking company." Id. The plaintiff did not raise this argument in its brief in support of the motion for leave to amend, which means it waived the argument. Laborers' Pension Fund v. W.R. Weis Company, Inc., 879 F.3d 760, 768 (7th Cir. 2018) ("Our standard is clear: Arguments raised for the first time in a reply brief are waived.").

19

Case 2:20-cv-01255-PP   Filed 09/02/22   Page 19 of 20   Document 53

The court will deny the plaintiff's motion for leave to amend the pleadings to add additional plaintiffs because the plaintiff delayed in bringing the motion and because allowing the plaintiff to amend would be futile.

III. Conclusion

The court **DENIES** the plaintiff's motion for leave to amend pleadings to add additional plaintiffs under Fed. R. Civ. Pro. 15(a)(2). Dkt. No. 31.

Dated in Milwaukee, Wisconsin this 2nd day of September, 2022.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**